Clara SIMS, et al., Plaintiffs,

v.

MONTGOMERY COUNTY
COMMISSION, et al.,
Defendants.

UNITED STATES of America, Plaintiff,

v.

The CITY OF MONTGOMERY,
ALABAMA, et al., Defendants.

Civ. A. Nos. 3708–N, 3739–N.

United States District Court,
M.D. Alabama, N.D.

Jan. 19, 1988.

Solomon S. Seay, Jr., Montgomery, Ala., for plaintiffs.

Robert D. Segall, Montgomery, Ala., for Montgomery City–County Personnel Bd., and Wade Moss.

W.T. Scott, Melvin Turner, Cinda Brown and Addie Berry, on behalf of themselves and others similarly situated, plaintiffs-intervenors.

Mac Sim Butler, individually and as Sheriff of Montgomery County and Calvin Huggins, individually and as Chief Deputy Sheriff in the Montgomery County Sheriff Dept.

George Beck, Baxley, Beck & Dillard, Montgomery, Ala., for Walker Hobbie, Jr. and Bob Smith.

Robert C. Black, and Randall C. Morgan, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for Ronnie L. Adkins.

Thomas T. Gallion, III, Haskell, Slaughter & Young, Kenneth L. Thomas, Tyrone C. Means, Massey, Means & Thomas, Montgomery, Ala., for Montgomery Co. Com'n.

Vanzetta Penn McPherson, Montgomery, Ala., for Scott Intervenors.

Calvin Pryor, U.S. Atty., Montgomery, Ala., Marybeth Martin, Federal Enforcement Section, Dept. of Justice, Civil Rights Div., Washington, D.C., for the U.S.

Robert Sasser, Montgomery, Ala., for Water Works & Sewer Bd.

Randall C. Morgan, Montgomery, Ala., for City of Montgomery.

Donald Watkins, Montgomery, Ala., for plaintiff-intervenor Williams.

Thomas T. Goggans, Montgomery, Ala., for white male police officers of the City of Montgomery—defendants-intervenors.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

On December 23, 1987, this court entered an order in one of these two consolidated cases, civil action no. 3739–N, appointing Hon. Donald V. Watkins, an attorney, to represent the interest of black police officers of the City of Montgomery, Alabama in the court-ordered process of developing and implementing a new promotion system for the city's police department. Under the order, the city is responsible for Watkins's "reasonable and necessary fees and expenses." Because the city had previously indicated that it objected to the appointment of anyone, the court in that order also informed the parties that it would later issue a memorandum opinion and further order addressing what the legal basis for the appointment is and setting forth in more detail what Watkins's duties are. Since the issuance of the December 23 order, the city has withdrawn its objection.

Even though all parties now agree to the appointment, or at least have no objection to it, the court still feels compelled to issue the memorandum opinion promised. It is still necessary to define what Watkins's duties are, and to do that the court must in some measure also articulate the basis for Watkins's appointment.

I.

These two cases have a long and fairly complicated history. In June 1972, Dr. and Mrs. E.L. Smiley along with Phillip Paradise filed a class action lawsuit, civil action no. 3708–N, charging that the hiring and promotion procedures used by the Police Department of the City of Montgomery discriminated against black persons. Two months later, in August 1972, the Attorney General of the United States, on behalf of the United States of America, filed another lawsuit, civil action no. 3739–N, charging similar racial discrimination in employment. On August 10, 1972, the two cases were consolidated. Together the lawsuits were premised on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e through 2000e–17; the fourteenth amendment to the Constitution of the United States; and 42 U.S.C.A. §§ 1981, 1983, 1985(3).

In October 1972, the court entered an order approving a plan, submitted by the United States and the defendants in civil action no. 3739–N, governing the employment practices of the city, including its police department. Although the plan did not provide individual relief, it did provide for extensive systemic relief, including requiring that the city "conduct all hiring and personnel practices, programs, and procedures on a non-discriminatory basis without regard to race, color, creed or national origin." The order approving the plan provides that the court retain jurisdiction for purposes of modification of the order, including the terms of the plan, and such further orders as may be appropriate. The order also provides for the dissolution of the plan after five years at the city's request, upon a showing that there has been both "substantial compliance" with the plan and an achievement of its "basic objectives." As of today, there has been no

request for the plan's dissolution, and thus the plan is still in effect.

In the same order issued in October 1972, the court dismissed the Smileys from civil action no. 3708–N. A month later, in November 1972, Paradise amended his complaint to add as plaintiffs Clara Sims and Ella Bell. In January 1973, the court dismissed Paradise at his own request because, as he stated, he was satisfied with the plan that the city and the United States had entered as to the police department in civil action no. 3739–N. With the appearance of Sims and Bell and the dismissal of the Smileys and Paradise, the focus of civil action no. 3708–N switched to the employment practices of Montgomery County.

The proceedings in civil action no. 3739–N continued to focus on the employment practices of the City of Montgomery, however. In January 1976, the court entered an order requiring that the city abolish separate applicant lists for male and female police patrol officers and that the city maintain one list with the officers assigned duties without regard to sex.[*] In January 1979, the court approved another consent decree, again incorporating broad language prohibiting race discrimination in hiring and promotions, but also providing for individual relief, including requiring that the city hire several specifically named black persons as police officers and also hire, over and above those specifically named, an additional 25 black persons. Under the decree, the city and the United States also agreed to continue to negotiate "the question of promotions."

Meanwhile, in September 1978, Sidney Williams, a black city police officer represented by Donald V. Watkins, intervened in civil action no. 3739–N; he alleged, among other things, that the city denied him promotion to sergeant in retaliation for contacting the U.S. Department of Justice and because of the existence of racially discriminatory employment procedures. By order dated April 30, 1979, the court held that the written examination for promotion to police

sergeant had an impermissible "disparate racial impact" on black officers in violation of Title VII, and the court enjoined the city from future use of that test, or any other test or procedure with disparate racial impact, unless and until the test or procedure has been "validated" in accordance with federal law; the court, however, denied Williams any individual relief. A year later, the court dismissed Williams as a named party. As of today, the city has not submitted an acceptable written test to the court. Instead, over the years, the city has used a subjective promotion procedure, which according to periodic representations made by the city to the court has had no adverse racial impact on black police officers.

## II.

Unfortunately, racial discrimination was not the only unlawful practice that the City of Montgomery Police Department engaged in. In 1986, in *Jordan v. Wilson*, civil action no. 75–19–N, this court held, among other things, that the subjective promotion system of the police department had both the purpose and effect of discriminating against female police officers in violation of Title VII and § 1983. *See Jordan v. Wilson*, 649 F.Supp. 1038 (M.D.Ala. 1986). The court concluded that the department's procedures "must be changed or replaced." 649 F.Supp. at 1062. The court, however, declined at that time to revise the procedures itself, but rather afforded the parties an opportunity "to agree on new promotion procedures that will not violate Title VII and § 1983." 649 F.Supp. at 1062. The court also later invited the United States to participate in the development process for the promotion procedures. This invitation was based on the fact that any promotion procedures adopted in *Jordan* must also meet the requirements of all outstanding orders in civil action no. 3739–N. *See Jordan v. Wilson*, 667 F.Supp. 772, 774 (M.D.Ala.1987).

---

[*] This order was entered in civil action no. 3739–N based on the evidence presented in another case, *Jordan v. Wright*, civil action no. 75–19–N, a sex discrimination case discussed later in this memorandum opinion *sub nom. Jordan v. Wilson.*

The United States and the parties in *Jordan* were unable to agree to any temporary or permanent promotion procedures to be placed in effect immediately. The court therefore itself fashioned and ordered implemented a temporary promotion system based on suggestions from the United States and the *Jordan* parties; the court also allowed the United States and the *Jordan* parties a year to develop, and to attempt to agree on, a permanent system. 667 F.Supp. at 775–81.

### III.

The court is of the opinion that, in light of the above history, it is necessary that an attorney be appointed to represent and protect the interests of black police officers in the court-ordered process of developing and implementing a new promotion system, both temporary and permanent, for the City of Montgomery Police Department. First of all, in April 1979, Williams obtained an order from the court in civil action no. 3739–N requiring that any future promotion procedures for sergeant meet specific criteria. Both the court and parties treated the Williams litigation as "class" litigation, with the relief secured viewed as having been obtained on behalf of a class of affected black police officers. Indeed, in a later order dated June 22, 1979, the court wrote that Williams was entitled to attorney fees and expenses only because "he prevailed on the *class allegations* of discriminatory promotion practices." (Emphasis added.) Civil action no. 3739–N is therefore a class action lawsuit. *See Graves v. Walton County Board of Education,* 686 F.2d 1135, 1139–40 (5th Cir.1982) (where a case has been treated as a class action by the parties and the court, the absence of formal certification is not controlling); *Bing v. Broadway Express, Inc.,* 485 F.2d 441, 446 (5th Cir.1973) (same).

The Williams class litigation is now at the point where the issue of the moment is implementation of relief obtained in April 1979; in other words, any promotion system developed and adopted in *Jordan* must also meet the requirements of the 1979 order obtained on behalf of the Williams class. Williams is, however, no longer present in this litigation; he cannot make known to the court what he and the class he represented believe the 1979 order requires regarding any new sergeant promotion procedures.

To be sure, in Williams's absence, the United States has stepped in and continued to litigate the issues presented by Williams. However, the United States did not obtain the 1979 class-wide relief, and the court should not necessarily assume that there is an identity of interests between those of the United States and those of the class of black police officers whom Williams represented and who will be affected by any promotion system for sergeant approved by the court. As one would reasonably expect, the United States will pursue the interests of those in whose behalf litigation is brought only to the extent that it understands and agrees with those interests. *See, e.g., United States v. Paradise,* 480 U.S. 149, 107 S.Ct. 1053, 94 L.Ed.2d 203 (1987) (Justice Department and individual plaintiffs disagree over what type of "affirmative relief" is available where there has been past racial discrimination in employment); *see also Dillard v. Crenshaw County,* 831 F.2d 246, 247 n. 3 (11th Cir. 1987) (Justice Department and individual plaintiffs disagree over relief available under § 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973). Indeed, in its brief informing the court that it has no objection to the appointment of an attorney to represent black police officers, the United States candidly stated that it cannot say "that its interest in this case will coincide with those of any black who might have raised concerns with any other entities, or any in the future raise such concerns with either the United States or others."

Moreover, as a class action, civil action no. 3739–N must meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. This rule authorizes the court to give notice to class members of their right to intervene where necessary "for the protection of the members of the class or otherwise for the fair conduct of the ac-

tion." Fed.R.Civ.P. 23(d)(2). Notice and intervention under the rule are "directly related to the importance of assuring that the class is adequately represented and enabling those class members on the outside of the litigation to function as effective watchdogs to make certain that the action is fully and fairly conducted." C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure: Civil 2d § 1799, pp. 438–40 (1986) (footnote omitted). Here, notice to the class members of their possible need to intervene is clearly warranted. Missing in this lawsuit is not only an "adequate" class representative, but there is no class representative present at all, to make sure that the interests of the class—in particular, as they are reflected in the 1979 order—are adequately represented.

The court therefore believes that it should take appropriate steps to invite one or more black police officers, who will be directly affected by any new procedures for promotion to sergeant, to participate actively in a representative capacity in the development and implementation of those procedures—that is, to make known to the court and parties what they believe the 1979 order requires as to those procedures. Because Mr. Watkins was the attorney who successfully secured the 1979 class-wide relief which is again at issue, it is appropriate that he should be the means by which the court should extend this invitation.

A second reason for appointing an attorney to represent the interests of black city police officers is that, although there are several orders outstanding in civil action no. 3739–N which were secured by the United States to vindicate the rights of all black police officers and which cover all promotional positions, including those above sergeant, and although the promotion plan to be developed in *Jordan* is to cover all such positions, the United States has limited its focus to only the entry level and police sergeant positions. For this reason as well as its previously articulated concern that there is the possibility of a divergence between its interests and those of black police officers, the United States has expressly informed the court that it "cannot now state that it can represent all black officers' interests in fashioning and implementing the temporary and permanent promotion systems." Under these circumstances, it is incumbent on the court to invite black police officers of the city to participate actively in this litigation to protect prior orders, and to protect their interests as reflected in said orders. Their presence will ensure that the court is aware of all potential conflicts and tensions between orders in *Jordan* and the orders in civil action no. 3739–N.

Of course, Watkins's appointment is based on the premise that there are black city police officers who, with knowledge of the history and circumstances detailed above, would want to participate actively in the development and implementation of a new promotion system for the City of Montgomery Police Department, and in particular would want to help assure that civil action no. 3739–N, which was brought in behalf of black police officers, continues in the direction that serves the interests of these officers. Watkins's initial responsibility will therefore be to contact these officers, to identify their interests in the promotion plan development and implementation process, and to secure, if warranted, named representatives to intervene to pursue those interests.

The City of Montgomery, as it has now agreed, will be responsible for Watkins's reasonable and necessary fees and expenses. Both Title VII and § 1983 provide that prevailing plaintiffs are entitled to attorney fees and expenses for efforts expended to monitor and gain compliance with court orders. *See, e.g., Turner v. Orr,* 785 F.2d 1498, 1503 (11th Cir.1986), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3332, 92 L.Ed.2d 738 (1986); *Adams v. Mathis,* 752 F.2d 553, 554 (11th Cir.1985) (per curiam); *Miller v. Carson,* 628 F.2d 346, 348 (5th Cir.1980). The city's black police officers are undoubtedly prevailing parties in the sense that since 1972 numerous final orders have been obtained for their benefit.

An appropriate order will be entered.

### ORDER

In accordance with the memorandum opinion entered this date, and based upon

the representations by counsel for all parties that they have no objections, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the appointment of Hon. Donald V. Watkins in civil action no. 3739–N to represent the interests of black police officers of the City of Montgomery, Alabama in fashioning and implementing temporary and permanent promotion systems for the city's police department, with the city responsible for Mr. Watkins's reasonable and necessary fees and expenses, is reaffirmed; and

(2) That the class of black officers represented by Mr. Watkins is allowed 35 days to come forward with one or more named class representatives to intervene in this litigation and to represent and pursue the interests of the class.