**UNITED STATES of America, Plaintiff,**

Sidney Williams, et al.,
Plaintiff–Intervenors,

v.

**The CITY OF MONTGOMERY, ALABAMA, et al., Defendants,**

Gordon M. Ledbetter, and John D. Shumway, Defendant–Intervenors.

Carolyn JORDAN, etc., et al., Plaintiffs,

Sandra M. Pierce–Hanna, etc., et al. Plaintiff–Intervenors,

v.

John WILSON, etc., et al., Defendants,

Gordon M. Ledbetter and John D. Shumway, Defendant–Intervenors.

Civ. A. Nos. 3739–N, 75–19–N.

United States District Court,
M.D. Alabama, N.D.

May 24, 1989.

Marybeth Martin, Employment Litigation Section, Civil Rights Div., Dept. of Justice, Washington, D.C., for plaintiff U.S.

Randall C. Morgan, Montgomery, Ala., for City of Montgomery.

Robert D. Segall, Montgomery, Ala., for Montgomery City–County Pers. Bd.

Donald Watkins, Montgomery, Ala., for plaintiff-intervenor Williams.

Thomas M. Goggans, Montgomery, Ala., for white male police officers of the City of Montgomery and Ledbetter, defendant-intervenors.

Kenneth L. Thomas, Massey, Means & Thomas, Montgomery, Ala., for plaintiffs-intervenors Williams, et al.)

J. Richard Cohen, Southern Poverty Law Center, M. Wayne Sabel, Argo, Enslen, Holloway & Sabel, Montgomery, Ala., for Pierce & Oyler.

Robert C. Black, Randall C. Morgan, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for all defendants except Wade L. Moss and Montgomery City–County Personnel Bd.

Robert D. Segall, Copeland, Franco, Screws & Gill, Montgomery, Ala., for Wade L. Moss and Montgomery City–County Personnel Bd.

David M. Smith, Gregory H. Hawley, Maynard, Cooper, Frierson & Gale, Birmingham, Ala., and George B. Azar, Azar & Azar, Montgomery, Ala., for defendants Folmar, Wilson, McGilvray, Eckerman, Cooper & Duffee.

Julian McPhillips, McPhillips, DeBardelaben & Hawthorne, and Gary E. Atchison, Montgomery, Ala., for plaintiff-intervenor Boyd.

## ORDER

MYRON H. THOMPSON, District Judge.

These two lawsuits constitute a challenge to, among other things, the promotion practices of the Police Department of the City of Montgomery, Alabama, as being racially and sexually discriminatory. On February 21, 1989, defendants City of Montgomery, et al., (the "city defendants") filed a motion for declaratory relief asking that this court approve their intention to promote, under a court-ordered interim promotion plan, an African–American police officer to the rank of lieutenant in the City Police Department. Based on the evidence and representations of the parties, the court concludes that the proposed promotion should be approved.

### I.

On May 20, 1987, as a part of the relief in these two cases, this court approved and ordered implemented an interim promotion procedure for the City of Montgomery Police Department. *Jordan v. Wilson,* 667 F.Supp. 772 (M.D.Ala.1987). The court considered the interim plan as an "emergency stop-gap measure," necessary only

because the police department needed a promotion system immediately and was unable to wait until a permanent system that would fully and adequately remedy the discriminatory flaws in the prior system could be developed. *Id.,* at 779. The interim plan requires, among other things, that promotions not result in adverse impact on either female or black candidates, measured in accordance with the "four-fifths rule" of the Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607.4(D). Under this rule, in general, a group has suffered adverse impact if its selection rate is less than ⅘'s or 80% of the rate for the group with the highest rate. *Id.,* at 777. The interim plan is to last only twelve months from its date of implementation. *Id.,* at 781. There was no appeal from the court-ordered plan.

## II.

The city defendants seek to promote one black under the interim plan. The Williams intervenors, who represent all black police officers in the police department, the Pierce–Hanna intervenors, who represent all female police officers, and the federal government all support the proposed promotion. The Ledbetter intervenors, who represent all white police officers, object, however, and they make two arguments: first, that the interim plan does not require the selective promotion of a black officer; and, second, that, if it does, the city defendants should be required to promote a white officer as well.[1]

The Ledbetter intervenors first point to the following uncontested figures. Under the interim plan to date, seven black police officers have applied for promotion to lieutenant but only one has been promoted, for

a selection rate of 14.3%; and 32 white officers have applied and six have been promoted, for a selection rate of 18.8%. The selection rate for black officers is therefore 76.1% of that for white officers, almost four percentage points short of the four-fifths rule's cut-off point. The Ledbetter intervenors argue that the four-fifths rule should not be applied mechanically, and that 76.1% is sufficiently close to 80% to allow a finding of no adverse impact.

Whether 76.1% is sufficiently close to 80% to permit a conclusion of no adverse impact is an issue the court need not reach. Adverse impact should be measured from a perspective of all promotions made after, not before, the promotion in question. Therefore, if the city defendants do not selectively promote a black officer, and a white officer is selected instead, which as the court understands will happen, then the selection rate for white officers will increase to 21.9%, and the selection rate for black officers, 14.3%, will be only 65.3% of that for white officers, a figure far below the 80% cut-off point under the four-fifths rule. The court is convinced that this disparity is sufficient to establish adverse impact.

The Ledbetter intervenors also suggest that the numbers involved in the applicant pool are too small to rely upon in making a determination of adverse impact under the four-fifths rule. They point to the Question 21 of the Questions and Answers to Clarify and Provide a Common Interpretation of the Uniform Guidelines, 44 Fed.Reg. 11996 (March 2, 1979), which suggests that the rule is inadequate for measuring adverse impact when the sample size is too small to be statistically significant.[2]

---

**1.** The court does not understand the Ledbetter intervenors to be challenging the selective promotion features in the interim promotion plan that were included to avoid adverse impact on blacks and women.

**2.** The Questions and Answers to Clarify and Provide a Common Interpretation of the Uniform Guidelines were announced by the federal agencies that promulgated the Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. §§ 1607.1 *et seq.* In publishing the

Questions and Answers, the agencies sought to ensure uniformity by reaching a common interpretation of the terms and standards set forth in the Uniform Guidelines. 44 Fed.Reg. 11996 (March 2, 1979).

In pertinent part, Question 21 and its answer read as follows:

21. Q. *Is evidence of adverse impact sufficient to warrant a validity study or an enforcement action where the numbers involved are so small that it is more likely than not*

The Ledbetter intervenors misconceive the intent behind the four-fifths rule in the interim plan. As stated, the plan was intended to be a temporary measure designed to assure that, during its twelve-month life, there would be no adverse impact on blacks and women. Adverse impact was therefore to be measured over only a brief period. The parties understood, as well, that, because the City of Montgomery Police Department is relatively small, the number of promotions during this brief period would be few. It was therefore implicit in the promotion plan that the four-fifths rule would apply to small numbers. Indeed, with any other understanding of the rule, in the circumstances of the Montgomery Police Department, the rule would never apply and the reference to the rule in the interim plan would be nothing but meaningless surplusage.[3]

The Ledbetter intervenors also misconceive the critical role of the four-fifths rule in the interim plan. Normally, the rule is a component in an analytical approach by which one determines whether an employment practice, after having been placed in operation for a reasonable period of time, is discriminatory. *See generally Nash v. Consolidated City of Jacksonville,* 837 F.2d 1534 (11th Cir.1988). The focus of the approach is the employment practice, and the question to be answered is whether the practice is discriminatory. The approach is traditionally as follows: The plaintiff must first show that the challenged employment practice has adverse impact. If this showing is made, the burden then shifts to the employer to demonstrate that the practice has a manifest relationship to the employment in question. And, finally, if the employer carries its burden, the plaintiff may still prevail if the evidence establishes that the employer is using the practice as a mere pretext for discrimination or that another employment practice would serve the employer's legitimate interests without the undesirable effect. *Id.,* at 1536. Because the ultimate question to be answered by this somewhat complex analytical process is whether it is reasonable to conclude in light of all relevant factors that the challenged practice is discriminatory, statistical information, such as whether the data reflecting adverse impact are "statistically significant," is often not only helpful but essential to the process.

The role of the four-fifths rule in the interim plan is quite different. The rule is not an "after-the-fact" means to determine whether the plan is discriminatory; whether the plan is discriminatory is not at issue. Rather, under the plan, the rule is an in-progress prophylactic device intended to prevent adverse impact, not to determine and measure its presence. The rule, under the interim plan, is therefore not some complex analytical formula intended to be triggered infrequently by sophisticated statistical analysis, but rather is a simple day-to-day operating tool to be used by the City of Montgomery Police Department to reassure both the parties and the court that,

that the difference could have occurred by chance? ...

A. No. If the numbers of persons and the difference in selection rates are so small that it is likely that the difference could have occurred by chance, the federal agencies will not assume the existence of adverse impact, in the absence of other evidence. In this example, the difference in selection rates is too small, given the small number of black applicants, to constitute adverse impact in the absence of other information (*see* Section 4D).... Generally, it is inappropriate to require validity evidence or to take enforcement action where the number of persons and the difference in selection rates are so small that the selection of one different person for one job would shift the result from adverse impact against one group to a situation in which that group has a higher selection rate than the other group.

On the other hand, if a lower selection rate continued over a period time, so as to constitute a pattern, then the lower selection rate would constitute adverse impact, warranting the need for validity evidence.

44 Fed.Reg. at 11999.

3. *Cf. Bunch v. Bullard,* 795 F.2d 384, 395 (5th Cir.1986) (fact that employer's work force is too small to provide meaningful data for a sophisticated statistical evaluation will not insulate employer from liability for using screening devices having discriminatory impact).

at the end of the court-ordered interim plan, the plan will not have had an adverse effect on either blacks or women. In short, the role of the rule in the interim plan is functional rather than analytical.[4]

The Ledbetter intervenors finally argue that, if the city defendants are allowed to select a black officer for promotion, they should be required to select a white officer as well. The court's response to this argument need not be long. The City of Montgomery Police Department needs only one additional lieutenant at this time; it does not need two. The court declines to saddle the department with the expense of an unnecessary lieutenant.

Accordingly, for the above reasons, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That defendants City of Montgomery, et al.'s motion for declaratory relief, filed February 21, 1989, is granted; and

(2) That it is DECLARED that the proposed promotion of an African–American police officer to the rank of lieutenant in the City of Montgomery Police Department is in conformity with the court-ordered interim promotion plan for the department and is therefore approved by the court.

---

**4.** Indeed, this notion of the four-fifths rule as a prophylactic device has been an integral element of the Montgomery Police Department's promotional practices for sergeant since 1979, when the department's reliance upon a sergeant's written examination was enjoined. *United States v. City of Montgomery,* 21 F.E.P. Cases 484 (M.D.Ala.1979). Thereafter, the department has been without a formal, permanent promotion plan for sergeants, and promotions to that rank have taken place only upon assurances to the court that each set of promotions requested would not have an adverse impact on black officers. *See Sims v. Montgomery County Commission,* 686 F.Supp. 878, 880 (M.D.Ala. 1988); *Jordan v. Wilson,* 667 F.Supp. at 777.