UNITED STATES of America, Plaintiff,

Sidney Williams, et al.,
Plaintiff–Intervenors,

v.

The CITY OF MONTGOMERY,
ALABAMA, et al., Defendants,

Gordon M. Ledbetter and John D.
Shumway, Defendant–Intervenors.

Carolyn JORDAN, etc., et al., Plaintiffs,

Sandra M. Pierce–Hanna, et al.,
Plaintiff–Intervenors,

v.

John WILSON, etc., et al., Defendants,

Gordon M. Ledbetter and John D.
Shumway, Defendant–Intervenors.

Civ. A. Nos. 3739–N, 75–19–N.

United States District Court,
M.D. Alabama, N.D.

April 9, 1990.

Marybeth Martin, Employment Litigation Section, Civ. Rights Div., Dept. of Justice, Washington, D.C., for plaintiff U.S.

Robert D. Segall, Copeland, Franco, Screws & Gill, Montgomery, Ala., for defendants Montgomery City–County Personnel Bd. and Barbara Montoya.

M. Wayne Sabel, Argo, Enslen, Holloway & Sabel, Montgomery, Ala., for plaintiffs-intervenors Sandra Pierce–Hanna, et al.

David M. Smith, Gregory H. Hawley, Maynard, Cooper, Frierson & Gale, Birmingham, Ala., George B. Azar, Azar & Azar, Montgomery, Ala., for defendants. Folmar, Wilson, McGilvray, Eckerman, Cooper and Duffee.

Julian McPhillips, McPhillips, DeBardelaben & Hawthorne, Gary E. Atchison, Montgomery, Ala., for plaintiff-intervenor Boyd.

Thomas M. Goggans, Montgomery, Ala., for defendants-intervenors Gordon Ledbetter, et al.

Kenneth L. Thomas, Thomas, Means & Gillis, and Donald Watkins, Montgomery, Ala., for plaintiffs-intervenors Sidney Williams, et al.

Robert C. Black, Randall C. Morgan, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for all other defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

These two lawsuits are now before the court on a motion filed by class representatives of all female police officers in the City of Montgomery Police Department, claiming that the recent promotion of six males, but no females, to the rank of captain violated the department's court-ordered interim promotion plan. For reasons that follow, the court finds that the female officers are entitled to appropriate relief.

### I.

The events leading up to the filing of the pending motion may be summarized as follows. On November 17, 1986, this court found that the promotion system of the Police Department of the City of Montgomery, Alabama had both the purpose and effect of discriminating against female police officers in violation of Title VII of the Civil Rights Act of 1964, as amended.[1] *Jordan v. Wilson (Jordan I)*, 649 F.Supp. 1038 (M.D.Ala.1986). The court found that "discriminating against women because they are women was and remains the 'standard operating procedure' within the City of Montgomery Police Department." *Id.* at 1058. The court concluded that the department's promotion procedures "must be changed or replaced." *Id.* at 1062.

Approximately six months later, on May 20, 1987, as part of the relief in the *Jordan* litigation, this court approved and ordered implemented an interim remedial plan for promotions in the police department. *Jor-*

*dan v. Wilson (Jordan II)*, 667 F.Supp. 772 (M.D.Ala.1987). The relief also applied to a companion case in which the police department was subject to orders prohibiting racial discrimination in hiring and promotions. *Id.; see also Sims v. Montgomery County Commission*, 686 F.Supp. 878, 880 (M.D.Ala.1988) (discussing the history of the race discrimination case). The interim plan requires, among other things, that promotions have no adverse impact on either female or African–American candidates, measured in accordance with the "four-fifths rule" of the Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607.4(D). Under this rule, in general, a group has suffered adverse impact if its selection rate is less than $\frac{4}{5}$'s or 80% of the rate for the group with the highest rate. *Jordan II*, 667 F.Supp. at 777. The interim plan was intended to last only twelve months. *Id.* at 781.

The court recognized that the interim remedial plan involved sex-conscious and race-conscious considerations which, according to some Supreme Court Justices, should be avoided except where necessary. *See, e.g., United States v. Paradise*, 480 U.S. 149, 166 n. 17, 107 S.Ct. 1053, 1064 n. 17, 94 L.Ed.2d 203 (1987) (Brennan, J., plurality opinion) (discussing how Justices have approached the standard for affirmative action differently). *See also Mann v. City of Albany, Ga.*, 883 F.2d 999, 1005–07 (11th Cir.1989) (discussing unsettled state of the law regarding standard of review of judicially fashioned affirmative action plans). The court was, however, left with no other choice. The police department could not continue to promote under procedures already found to be sexually and racially discriminatory; nor could the court ban all promotions, a result which would not only cripple the enforcement efforts of the department but would again victimize women and blacks in the department by continuing to deny them the opportunity for advancement. As the Supreme Court observed in *Local 28 of Sheet Metal Work-*

---

1. 42 U.S.C.A. §§ 2000e through 2000e–17. The court found that the promotion system also vio-

lated 42 U.S.C.A. § 1983.

ers' *International Association v. E.E. O.C.*, 478 U.S. 421, 450, 106 S.Ct. 3019, 3036, 92 L.Ed.2d 344 (1986), in some circumstances, "affirmative race-conscious relief may be the only means available." "[A] district court may find it necessary," the Court continued, "to order interim hiring or promotional goals pending the development of nondiscriminatory hiring or promotion procedures. In these cases, the use of numerical goals provides a compromise between two unacceptable alternatives: an outright ban on hiring or promotions, or continued use of a discriminatory selection procedure." *Id.* at 450–56, 106 S.Ct. at 3037.[2]

The interim remedial plan's requirement of no adverse impact was therefore an "emergency stop-gap measure," necessary because the Montgomery Police Department needed a promotion system immediately, and because it would be unfair to the department and its officers to require that they wait until a permanent system could be developed, one that would fully and adequately remedy the discriminatory flaws in the prior system.[3] *Jordan II,* 667 F.Supp. at 779. The interim plan allowed the police department to continue with promotions without perpetuating the history of sex and race discrimination which led to filing of the present lawsuits.[4]

## II.

The "Pierce–Hanna intervenors," who represent all female police officers in the City of Montgomery Police Department, have filed the instant motion claiming that the recent promotion of six male, but no female, officers to the rank of captain violated the court-ordered interim plan.[5] The motion is opposed by two groups: the "city defendants," consisting of the city's mayor and chief of police, and the "Ledbetter intervenors," who represent all white male officers in the police department. The "Williams intervenors," who represent all African–American police officers in the department, do not oppose the motion.

The evidence is undisputed that the police department promoted six males but no females to captain during the period of enforcement of the interim plan. The evidence is also undisputed that there were 25 applicants for the rank of captain: 23 males and two females. The success rate for males is therefore 26%, and that for females 0%. These recent promotions have therefore had an adverse impact on women in the police department, because zero is, of course, less than four-fifths of 26%. *See Paradise v. Prescott,* 580 F.Supp. 171 (M.D.Ala.1983) (discussing a similar scenario). The city defendants and the Ledbetter intervenors argue that the four-fifths rule should nevertheless not be applied because the applicant pool is too small. They point to Question 21 of the Questions and Answers to Clarify and Provide a Common Interpretation of the Uniform Guidelines, 44 Fed.Reg. 11996 (March 2, 1979), which suggests that the rule is inadequate for measuring adverse impact when the sample size is too small to be statistically significant.[6]

**2.** In any event, those objecting to the court-ordered promotion of a woman under the interim plan have not indicated that they are challenging the interim plan itself.

**3.** By order dated October 16, 1989, the court has allowed the Montgomery Police Department to take the first steps toward implementation of a permanent promotion plan.

**4.** The interim plan also serves the important remedial purpose of redressing the police department's long history of discrimination. *See United States v. Paradise,* 480 U.S. 149, 107 S.Ct. 1053, 94 L.Ed.2d 203 (1987).

**5.** Currently, there are no female captains in the police department.

**6.** The Questions and Answers to Clarify and Provide a Common Interpretation of the Uniform Guidelines were promulgated by the federal agencies that promulgated the Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. §§ 1607.1 *et seq.* In publishing the Questions and Answers, the agencies sought to ensure uniformity by reaching a common interpretation of the terms and standards set forth in the Uniform Guidelines. 44 Fed.Reg. 11996 (March 2, 1979).

In pertinent part, Question 21 and its answer read as follows:

21. Q. Is evidence of adverse impact sufficient to warrant a validity study or an enforcement action where the numbers involved are so small that it is more likely than not

■ The issues presented in this phase of this litigation are almost on all fours with those presented in an earlier order, entered by this court on May 24, 1989, *United States v. City of Montgomery*, 731 F.Supp. 436 (M.D.Ala.1989), and recently affirmed by the Eleventh Circuit Court of Appeals on March 20, 1990. 900 F.2d 265 (11th Cir.1990) (table). In that order, the court addressed whether a scenario, in which the selection rate for black police officers was only 65.3% of that for white police officers, violated the department's interim promotion plan. In this scenario, seven out of 32 white officers are promoted to lieutenant, for a selection rate of 21.9%, but only one out of seven blacks is, for a selection rate of 14.3%. The Ledbetter intervenors opposed application of the four-fifths rule for the same reason that they and the city defendants now oppose application of the rule to the present case involving the women police officers: that the numbers are too small. The court's response today is the same as it was in its order of May 24, 1989.

First of all, the city defendants and the Ledbetter intervenors overlook the intent behind the four-fifths rule in the interim plan. As this court stated in its order of May 24, 1989, "the plan was intended to be a temporary measure designed to assure that, during its twelve-month life, there would be no adverse impact on blacks and women. Adverse impact was therefore to be measured over only a brief period."

*United States v. City of Montgomery*, 731 F.Supp. at 439. Moreover, "The parties understood ... that, because the City of Montgomery Police Department is relatively small, the number of promotions during this brief period would be few. It was therefore implicit in the promotion plan that the four-fifths rule would apply to small numbers." [7] *Id.* "[W]ith any other understanding of the rule," the court continued, "the rule would never apply and the reference to the rule in the interim plan would be nothing but meaningless surplusage." [8] *Id.*

Second, the city defendants and the Ledbetter intervenors overlook "the critical role of the four-fifths rule in the interim plan." *United States v. City of Montgomery*, 731 F.Supp. at 439. Normally, the rule is a component in an analytical process used to uncover whether an employment practice is operating in an unnecessarily discriminatory manner. *See Wards Cove Packing Co., Inc. v. Atonio*, —— U.S. ——, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). The focus of the approach is the employment practice, and the question to be answered is whether the practice is discriminatory. The three-step approach is traditionally as follows: First, the employee must identify the specific employment practice challenged and, further, must show that the challenged practice falls significantly more harshly on one group than another, that is, that the practice under

---

that the difference could have occurred by chance? ...
A. No. If the numbers of persons and the difference in selection rates are so small that it is likely that the difference could have occurred by chance, the Federal agencies will not assume the existence of adverse impact, in the absence of other evidence.... Generally, it is inappropriate to require validity evidence or to take enforcement action where the number of persons and the difference in selection rates are so small that the selection of one different person for one job would shift· the result from adverse impact against one group to a situation in which that group has a higher selection rate than the other group. On the other hand, if a lower selection rate continued over a period of time, so as to constitute a pattern, then the lower selection rate would constitute adverse impact, warranting the need for validity evidence.

44 Fed.Reg. at 11999.

7. In particular, the parties understood that the number of female officers in each of the upper ranks would be fewer than a handful.

Moreover, because the fact that there are only a small number of women in the upper ranks of the Montgomery Police Department may be directly attributed to the department's long-standing past history of sex discrimination, it would be especially unjust to prohibit application of the rule to these women and their small numbers. This restriction would allow the department to take advantage of its discrimination.

8. *Cf. Bunch v. Bullard*, 795 F.2d 384, 395 (5th Cir.1986) (fact that employer's work force is too small to provide meaningful data for a sophisticated statistical evaluation will not insulate employer from liability for using screening devices having discriminatory impact).

attack has created "adverse impact." *Id.* at ——, 109 S.Ct. at 2124. If the selection rate for a group is four-fifths of that for another group, there is a presumption under the four-fifths rule that the practice is unnecessarily eliminating members of the former group. If this showing is made, the burden then shifts to the employer to produce evidence of employment justification for the employment practice. The employer's burden is one of production, not persuasion, for the burden of persuasion always remains with the employee. Finally, if the employer satisfies its burden, the employee may prevail only if she shows that the employer's justification for the practice has no basis in fact or that another practice, without a similarly undesirable adverse effect, would also serve the employer's legitimate employment interests. *Id.* at ——, 109 S.Ct. at 2126. As this court concluded in its order of May 24, 1989, "Because the ultimate question to be answered by this somewhat complex analytical process is whether it is reasonable to conclude in light of all relevant factors that the challenged practice is [unnecessarily discriminatory in effect], statistical information, such as whether the data reflecting adverse impact are 'statistically significant,' is often not only helpful but essential to the process." *United States v. City of Montgomery,* 731 F.Supp. at 439.

In the interim plan, the four-fifths rule plays a much different role. "The rule is not an 'after-the-fact' means to determine whether the plan is discriminatory; whether the plan is discriminatory is not at issue." *United States v. City of Montgomery,* 731 F.Supp. at 439. Rather, the rule is "an in-progress prophylactic device intended to prevent adverse impact, not to determine and measure its presence." *Id.* In-

deed, the interim plan expressly provides that its selection procedure is intended to "*avoid* adverse impact." *Jordan II,* 667 F.Supp. at 781 (emphasis added). The rule as used in the interim plan is therefore "not some complex analytical formula intended to be triggered infrequently by sophisticated statistical analysis, but rather is a simple day-to-day operating tool to be used by the City of Montgomery Police Department to reassure both the parties and the court that, at the end of the court-ordered interim plan, the plan will not have had an adverse effect on either blacks or women. In short, the role of the rule in the interim plan is functional rather than analytical."[9] *United States v. City of Montgomery,* 731 F.Supp. at 439–40.

### III.

■ The city defendants further argue that the police department does not need an additional captain, female or male. Whether this is true is immaterial. Once the police department proceeded to promote six persons to the rank of captain it had to do so within the requirements of the interim plan. The plan expressly required the city defendants to "avoid" adverse impact against women. The city defendants failed to do so, however, and they cannot now use their own failure to deny the women in the department what is rightfully theirs under the interim plan. The female police officers are therefore entitled to a remedial promotion of a woman to captain, in accordance with the selective certification procedures of the interim plan.

In their filings with the court, the city defendants have from time to time indicated that they oppose the interim plan and that they do not intend, and have never intended, to make any selective certifica-

---

**9.** In its order of May 24, 1989, the court buttressed its observations about the four-fifths rule with the following:

> Indeed, this notion of the four-fifths rule as a prophylactic device has been an integral element of the Montgomery Police Department's promotional practices for sergeant since 1979, when the department's reliance upon a sergeant's written examination was enjoined. *United States v. City of Montgomery,* 21 F.E.P. Cases 484, [1979 WL 217] (M.D.Ala.1979).

> Thereafter, the department has been without a formal, permanent promotion plan for sergeants, and promotions to that rank have taken place only upon assurances to the court that each set of promotions requested would not have an adverse impact on black officers. *See Sims v. Montgomery County Commission,* 686 F.Supp. 878, 880 (M.D.Ala.1988); *[Jordan II],* 667 F.Supp. at 777.

*United States v. City of Montgomery,* 731 F.Supp. at 440 n. 4.

tions under it.[10] The city defendants did not appeal the order of May 20, 1987, imposing the interim plan; nor have they filed a motion to be relieved of their obligations under the plan. The interim plan, including its selective certification provisions, therefore, remains in full force and effect, and all promotions during the period of the plan, including the six promotions now at issue, must be in compliance with the plan. In other words, the city defendants are required by this court's order of May 20, 1987, to make selective certifications when necessary to avoid adverse impact on women and blacks.

Finally, at the hearing on the Pierce–Hanna intervenors' motion, counsel for the city defendants asked whether it would be legal and appropriate to demote a male captain and replace him with a female officer so as to comply with the interim plan. The Pierce–Hanna intervenors are not requesting such relief, and the city defendants have not indicated that they in fact intend to take such action instead of simply promoting a female officer. The question is therefore hypothetical and not appropriately before the court.

An appropriate order will be entered.

### ORDER AND INJUNCTION

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the motion for supplemental injunctive relief filed by the Pierce–Hanna intervenors on July 10, 1989, be and it is hereby granted;

(2) That the city defendants, Chief of Police John Wilson and Mayor Emory Folmar, their officers, agents, servants and employees and those persons in active concert or participation with them who receive actual notice of this order, be and they are each hereby ENJOINED and RESTRAINED from failing to promote a female police officer to the rank of captain within 21 days, in accordance with the selective certification procedure set forth in

the interim promotion plan ordered by the court on May 20, 1987; and

(3) That it is DECLARED that the female police officer selected by the city defendants be and she is hereby entitled to the captain's promotion retroactively, with such backpay and other benefits she would have received had she been promoted in a timely fashion under the interim promotion plan.

The clerk of the court is DIRECTED to issue a writ of injunction.

---

**10.** *See* City Defendants' Trial Brief, filed October 5, 1989; Deposition of defendant Wilson, dated September 27, 1989; City Defendants' Answers to Interrogatories, contained in the Pierce–Hanna intervenors' exhibit 7.